**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 10-0009-01 (PLF)** |
| | : | |
| | : | |
| **EBERE C. ADIGHIBE,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter, this memorandum in aid of sentencing of defendant Ebere C. Adighibe. As will be discussed below, the government believes that an application of the advisory Sentencing Guidelines is appropriate in the instant case.

I.      FACTUAL BACKGROUND

From at least March 2004, and continuing until December 2007, United States Treasury tax refund checks were stolen from the mail. Defendant Ebere C. Adighibe and/or his co-conspirators then altered the legitimate United States Treasury tax refund checks by changing the name and address of the payee, and sometimes changed the exact amount of the check. Mr. Adighibe and his co-conspirators then negotiated or attempted to negotiate the altered checks at various banks in the District of Columbia and Maryland, including Citibank, an FDIC insured financial institution. As a result of Mr. Adighibe's conduct, Citibank sustained actual losses of $66,121.65 and Wells Fargo Bank (formerly Wachovia) sustained a loss of $44,335.32.

On January 6, 2010, a federal grand jury returned a twenty-count indictment against Mr. Adighibe and one of his co-conspirators, Victor Dimbo. On May 17, 2010, Mr. Adighibe pled guilty to Count One (Conspiracy) and Count Ten (Bank Fraud) of the Indictment. As part of the plea

agreement, the Mr. Adighibe agreed to forfeit all interests of a money judgment in the amount of $110,456.77, and agreed to pay restitution in the amount of $110,456.77.

II.   SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing Mr. Adighibe.  These factors are discussed below numbered as they are in Section 3553(a).

(1)  The nature and circumstances of the offense and the history and characteristics of the defendant.

(A)   Nature and circumstances of the offense

Here, the nature and circumstances of the offense involved a conduct that spanned at least two years.  As stated in the Statement of Offense, On or about July 18, 2006, Mr. Adighibe opened a business account at Wachovia Bank in the name of Akpuukwu Ltd. Mr. Adighibe was the sole signatory on the account.  On or about October 14, 2006, Mr. Adighibe opened a commercial deposit account at M&T Bank in the name of Akpuukwu Ltd.  Mr. Adighibe was the sole signatory of that account.  On or about December 4, 2006, Mr. Adighibe opened a business checking account at Citibank in the name of Akpuukwu Ltd/ Calzature Men.  On or about December 6, 2006,  a stolen U.S. Treasury tax refund check, originally issued to an individual with the initials, BAB & MGJ, for $66,121.45, was deposited at a Citibank branch in Washington, DC, in Akpuukwu Ltd. / Calzature Men.  The stolen check had been altered to reflect that it was payable to Akpuukwu Ltd.

On or about December 6, 2006,   a stolen U.S. Treasury tax refund check, originally issued to an individual with the initials, DLP and JDP, for $40,000, was deposited at a Wachovia branch located in Akpuukwu Ltd./ Calzature Men account number XXXXXX0789.  The stolen check had been

2

altered to reflect that it was payable to Calzature Men.  Between on or about December 12, 2006 through December 27, 2006, Mr. Adighibe wrote checks payable to cash, used a debit card and made ATM withdrawals in Maryland, Washington D.C., and elsewhere, from Akpuukwu Ltd./ Calzature Men's bank account totaling $39,822. As a result of Mr. Adighibe's conduct, Citibank sustained actual losses of $66,121.65 and Wells Fargo Bank (formerly Wachovia) sustained a loss of $44,335.32.  This conduct falls squarely within the class of cases to which the applicable Sentencing Guidelines are addressed.  Thus, consideration of the nature and circumstances of the offense counsel in favor of a sentence consistent with the Guidelines.

(B)  The history and characteristics of the defendant

Mr. Adighibe's history and characteristics also counsel in favor of a Guidelines driven sentence.  Here, the PSR reflects that the Mr. Adighibe was professionally, intellectually and emotionally capable of avoiding his criminal conduct, but instead chose to engage in it.  The PSR reflects that Mr. Adighibe graduated from high school in 1980.  Between 1982 and 1983, Mr. Adighibe enrolled at Wayne State University, and in 2002, Mr. Adighibe enrolled in American University and completed two semesters.  PSR ¶ ¶ 66-68.  His formative years were void of abuse and his basic needs were met because his family was in an upper-middle class socioeconomic environment.  PSR ¶ 53.  Mr. Adighibe has had no health issues and has not been diagnosed with any mental illnesses. PSR ¶¶ 61-63.  The defendant, in short, was someone who should have known better than to engage in his fraudulent conduct.  The defendant nevertheless accepted responsibility for his crime at his earliest opportunity. He readily admitted his crime, did not minimize his involvement and fully cooperated with the Pre-sentence report writer.  In the government's view, the defendant has also expressed genuine remorse for his illegal conduct.  Based on his age, the lack of

substantive criminal history, it does appear that Mr. Adighibe's conduct was out of character for him.

(2)    The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (c) to protect the pubic from further crimes of the defendant; and (D to provide defendant with appropriate education or vocational training.

A Guidelines based sentence is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  See 18 U.S.C. § 3553(a)(2). Here, as discussed above, the defendant committed a serious felony offense that spanned a period of at least two years.   The need for deterrence of others and to promote respect for the law are also important objectives in this case that can be met by an application of the Guidelines.  As to the final consideration, there does not appear to be a need in this case to adjust the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  See 18 U.S.C. § 3553(a)(2)(D).

(3)  The kinds of sentences available

The maximum term of imprisonment for Conspiracy and Aiding and Abetting is 5 years confinement and/or $250,000 fine, with a term of supervised release of not more than 3 years.  The maximum term of imprisonment for Bank Fraud is 30 years confinement and/or $1,000,000 fine, with a term of supervised release of not more than 5 years.

(4)  The sentencing range established by the United States Sentencing Guidelines

The Supreme Court has declared that, in terms of determining an appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  *Gall v. United States*, 128 U.S. 586, 596 (2007).  Here,

the government believes that the PSR correctly calculates that total offense level is 14.   While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), it remains the case that "the Commission fills an important institutional role:  It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'"  *Id*. at 574 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). As stated by the Supreme Court in Kimbrough:  "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."  *Id.*, (quoting *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)).

In *Rita*, the Supreme Court held that an appellate court may presume that a within-Guidelines sentence is reasonable.  While this presumption does not apply before the district court, *Rita*, 127 S. Ct. at 2465, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing Court and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case.  That double determination significantly increases the likelihood that the sentence is a reasonable one."  *Id*. at 2463 (emphasis in original).

Further, the advisory Guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984.  Reference to the Guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result

of basing sentences on the luck of the draw in judicial assignments.  Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 U.S. 586, 597 n.6.

(5) Any pertinent policy statement issued by the USSC

The government is unaware of any pertinent policy statements issued by the USSC.

(6) The need to avoid unwarranted sentencing disparities among defendants with similar records

As discussed above, a Guidelines sentence would help prevent such disparities between the defendant and similar defendants.

(7) The need to provide restitution to any victims of the offense.

The victims in this case is Citibank and Wells Fargo.  Mr. Adighibe should make restitution to Citibank in the amount of $66,121.65 and to Wells Fargo Bank (formerly Wachovia) in the amount of $44,335.32.

III.    CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court impose a sentence that is consistent with the recommendations of the Sentencing Guidelines and reflects the factors in 18 U.S.C. §3553.   In addition, Mr. Adighibe should be ordered to pay restitution to Citibank in the amount of $66,121.65 and to Wells Fargo Bank (formerly Wachovia) in the amount of $44,335.32.  Furthermore, consistent with the plea agreement, Mr. Adighibe consented to the

forfeiture of a money judgment in the amount of $110,456.77. Accordingly, the government requests that the court enter a Final Order of Forfeiture as part of Mr. Adighibe's sentence. Such a sentence would be commensurate with the defendant's actions in the instant case.

Respectfully submitted,

RONALD C. MACHEN JR
United States Attorney
For the District of Columbia

By:    ___/s/_____
LIONEL ANDRE
DC Bar #422534
Assistant United States Attorney
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.  20530
(202) 252-7818
Lionel.Andre@usdoj.gov

Dated: September 1, 2011